UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TERRY FRANCIS SAVOY                                      CIVIL ACTION

VERSUS                                                          NO. 15-4906

MARLIN GUSMAN                                            SECTION "A" (4)

<u>RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF</u>

Terry Francis Savoy is a detainee currently in the custody of the Orleans Parish Sheriff's Office, awaiting trial on a state charge of racketeering.  He has applied to this Court for a writ of *habeas corpus* under 28 U.S.C. § 2241 and for a temporary restraining order enjoining the state proceeding.  Because the claims he raises are procedurally barred and without merit, his application should be denied.

I.        **RECORD**

Submitted with this response is the state court record for Savoy's criminal prosecution, presented in four (4) volumes.  Volumes 1 through 3 comprise the existing record for Orleans Parish Criminal District Court case number 522-211, presented as received from the district court.  Volume 4 contains the records for a writ application filed by Savoy in the Louisiana Fourth Circuit Court of Appeal under docket number 2015-K-610, as well as applications filed by the State in the Louisiana Fourth Circuit and the Louisiana Supreme Court under docket numbers 2015-K-808 and 2015-KK-1738, respectively.

II.       **BACKGROUND**

On May 2, 2014, Savoy was arrested in Los Angeles, California pursuant to a warrant

1

issued by a Louisiana court.[1]   Four days later officers from the Los Angeles County Sheriff's Office executed a warrant to search Savoy's residence, where they seized documents and computer equipment.[2]   Savoy was extradited to Louisiana, and on October 14, 2014 the State filed a bill of information charging him with one count of racketeering, a violation of La. Rev. Stats. 15:1353(C), stemming from his sale of insurance policies through a sole proprietorship by the name of Ntrust Financial.[3]   Savoy was arraigned on October 30, when bail was set at $100,000.[4]   Following a hearing on March 24, 2015, the trial court made a finding of probable cause on April 24.   That same day the court denied a defense motion to quash the bill of information, as well as a petition for a writ of *habeas corpus*.[5]   Savoy filed an application under docket number 2015-K-610 in the Louisiana Fourth Circuit on June 3, 2015 seeking review of the trial court's ruling on his motion to quash.   The appellate court denied the application on June 16.[6]   On July 29 the State applied for review of the trial court's decision on June 26, 2015 to exclude certain evidence.   The Fourth Circuit denied relief and the State then applied to the Louisiana Supreme Court, where its application was again denied.[7]

At the hearing conducted on March 24, 2015, Gerald Bayer, an investigator for the Office of the Louisiana Attorney General, testified as follows.   Bayer began investigating Savoy based upon a referral from the FBI and found that in 2012 he had sold several insurance policies to one Delisa Tate, who operated one healthcare business, and was in the process of acquiring another,

---

[1] State Court Record (SCR) Vol. 1 of 4, Hearing Transcript for 3/24/2015 ("Hrg. Tr. for 3/24/2015"), pp. 22-25; SCR Vol. 3 of 4, Orleans Parish Arrest Warrant and Affidavit.

[2] SCR Vol. 1 of 4, Hrg. Tr. for 3/24/2015, pp. 25-29; SCR Vol. 3 of 4, Receipt for Seized Property.

[3] SCR Vol. 2 of 4, Bill of Information; SCR Vol. 3 of 4, Orleans Parish Arrest Warrant and Affidavit.

[4] SCR Vol. 1 of 4, Docket Master, p. 1.

[5] *Id*. at 2-3; *see also* SCR Vol. 3 of 4, Petition & Supplemental Petition for Habeas Corpus; *id*., Motion & Amended Motion to Quash.

[6] SCR Vol. 4 of 4, Writ Action 2015-K-610.

[7] *Id*., Writ Action 2015-K-808; *id.*, Writ Action 2015-KK-1738.

in New Orleans.[8]  Savoy, who was based in Los Angeles, communicated with Tate by phone and email, and on one occasion he met with her in downtown New Orleans.  Savoy sold Tate workman's comp and general liability insurance policies for both of her companies, ostensibly underwritten by CAN.  No such insurance company exists, although there is a company by the name of CNA.[9]  Neither Savoy nor Ntrust Financial were registered to distribute insurance in either Louisiana or California.  Tate wired several thousand dollars to Savoy in connection with the policies, but on August 2012, when she attempted to file a workman's comp claim, she discovered that the underlying policy was bogus.[10]  Savoy ceased communicating with her soon after this.  Tate contacted the FBI, which referred the matter to the Louisiana Attorney General's Office.  Bayer obtained a warrant for Savoy's arrest based on his dealings with Tate, and three warrants were also issued based on similar schemes in parishes across the state.[11]  Bayer testified on cross-examination that, to his knowledge, Savoy did not have a home or business address in New Orleans.[12]  On October 30, the district court set Savoy's trial for January 12, 2016.[13]

Savoy attempted to commence a federal *habeas* proceeding on or about September 24, 2015, but his filing was rejected.  The instant petition was submitted on or about October 11.[14]  It argues that in asserting jurisdiction over Savoy, Louisiana has violated the Fourth Amendment, the Sixth Amendment, the Fourteenth Amendment, the Commerce Clause, and Article 3, § 2 of the United States Constitution.  Violation of the *Ex Post Facto* Clause is also alleged.

---

[8] SCR Vol. 1 of 4, Hrg. Tr. for 3/24/2015, pp. 6-14.

[9] *Id*. at 9-14.  Bayer contacted CNA, which confirmed that it had not issued the policies sold by Savoy. *Id*. at 19-20.

[10] *Id*. at 12-18.

[11] *Id*. at 18-22.

[12] *Id*. at 46.

[13] SCR Vol. 1 of 4, Docket Master, p. 5.  The docket master is dated 11/16/2015.  A minute entry was generated the following day that noted denial of the State's writ application by the Louisiana Supreme Court.  Otherwise there has been no further activity in the state case at this time.

[14] Rec. Docs. 1 & 3.

**III.**    *HABEAS* **RELIEF UNDER 28 U.S.C. § 2241**

State inmates must typically seek redress in the federal system by filing a petition for *habeas corpus* relief under 28 U.S.C. § 2244, *et seq*., the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).    But where a petitioner raises federal claims while detained before trial, the proper vehicle for such claims is 28 U.S.C. § 2241, the pre-AEDPA *habeas* statute.  *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Holley v. Texas*, 194 F.3d 1309 (5th Cir. 1999).  A § 2241 petition is not subject to the AEDPA's heightened standards of review. And whereas the AEDPA places a one-year limitations period on *habeas* claims, see 28 U.S.C. § 2244(d)(1)(a), § 2241 imposes no such time limit.  *Day v. McDonough*, 547 U.S. 198, 202 n. 1 (2006).

In granting relief to prisoners awaiting trial in state courts, however, federal courts face a major risk of offending principles of comity and federalism.  "In no area of the law is the need for a federal court to stay its hand pending completion of state proceedings more evident than in the case of pending criminal proceedings."  *Evans v. Ct. Com. Pl., Del. County, Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).  Consequently, the Supreme Court has long held that "federal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court."  *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 489 (1973) (citation omitted); *see also Brown v. Estelle*, 530 F.2d 1280, 1283 (5th Cir. 1976) ("an attempt to dismiss an indictment or otherwise prevent a prosecution . . . is normally not attainable through federal habeas corpus").  *Younger* abstention represents one expression of this general principle.  *See Younger v. Harris*, 401 U.S. 37, 41 (1971) (finding district court injunction "must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special

4

circumstances.") (footnote omitted).  Likewise, although § 2241 contains no express exhaustion requirement, courts hold that pretrial *habeas* petitioners must still exhaust state remedies before seeking relief in federal court.  *See Dickerson v. La.*, 816 F.2d 220, 223 (5th Cir. 1987).

## IV.   EXHAUSTION

The exhaustion requirement serves to "protect the state courts' role in the enforcement of federal law."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982).  To that end, a prisoner "must fairly present his claim in each appropriate state court."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted).  This generally requires the petitioner to have pursued his claims in a procedurally proper manner all the way to the state's highest court, even if review by that court is discretionary.  *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998).  Exhaustion is determined on a claim-by-claim basis.  "The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.  Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."  *Picard v. O'Connor*, 404 U.S. 270, 276 (1971).  Exhaustion is a "threshold issue" in *habeas* review.  *Edgar v. Stalder*, 83 Fed. App'x 648 (5th Cir. 2003) (unpub.).

The instant petition presents i) jurisdictional claims under the Sixth Amendment and U.S. Const. art. 3, §2; ii) a due process claim; iii) a Fourth Amendment claim; iv) a Commerce Clause claim; and v) an *Ex Post Facto* Clause claim.  In contrast, Savoy's motion to quash and state *habeas* petition both raised the following issues: i) jurisdiction,  ii) the sufficiency of the state bill of information, and iii) the sufficiency of the state arrest warrant.[15]  While Savoy appears to

---

[15] SCR Vol. 3 of 4, Petition & Supplemental Petition for Habeas Corpus; *id*., Motion & Amended Motion to Quash.  *See also id.*, Ruling on Motion to Quash (which also addresses the *habeas* petition).

believe that he exhausted available state remedies as to the denial of both of these filings, this is not correct.  After the state trial court denied his *habeas* petition, Savoy could have sought review by a higher court, but did not.[16]  Savoy did apply to the Louisiana Fourth Circuit following the denial of his motion to quash; but, once this application had been denied, he did not avail himself of the opportunity to apply to the state supreme court.[17]  Thus, Savoy has failed to present any of his claims to the state's highest court, and has not even begun the process of exhausting most.

## V.    ABSTENTION

In addition to being unexhausted, Savoy's claims are barred at this time by general principles of abstention.  "Simply put, a state pretrial detainee may not use § 2241 to derail a pending state criminal proceeding by attempting 'to litigate constitutional defenses prematurely in federal court.'"  *Gibson v. Orleans Parish Sheriff*, Civ No. 12-2632, 2013 WL 1099056, at *2 (E.D. La. Feb. 20, 2013) (quoting *Braden*, 410 U.S. at 490).  While an exception exists for

---

[16] "Under [Louisiana law], a pre-conviction appeal of a denial of habeas corpus is not allowed."  Rec. Doc. 3, pp. 18-19.  That is perfectly true.  But it does not to foreclose *any* review of such rulings, merely appellate review.  Louisiana courts of appeal are vested with both appellate and supervisory jurisdiction. La. Const. art. 5, § 10(A).  Parties may (and often do) obtain review of non-appealable rulings by invoking the appellate courts' supervisory jurisdiction. *Compare State ex rel. Lay v. Cain*, 691 So.2d 135, 138 (La. App. 1 Cir. 1997) ("This court has no appellate jurisdiction over a judgment refusing to grant a release upon a petition for a writ of habeas corpus. Since we have the record before us, however, we shall treat this matter as a timely application for the exercise of our supervisory jurisdiction") (internal citation omitted); *Brown v. Noel*, 3:10-CV-0479, 2010 WL 2682464, at *6 n. 7 (W.D. La. May 7, 2010) ("The district court's denial of such a claim [for *habeas* relief] is not appealable; however, it is reviewable by the appropriate court of appeal by supervisory writ.  Thereafter, a state *habeas* petitioner must seek further review in the Louisiana Supreme Court.") (internal citations omitted).

[17] Savoy had thirty days to seek review of the appellate court's ruling by the Louisiana Supreme Court. La. S. Ct. Rules, Rule X, § 5(A).  Although Savoy appears to have believed that he required an order from the trial court before taking this action, there exists no such requirement.  SCR Vol. 2 of 4, Motion for Order to Apply for Writs; *see generally* La. S. Ct. Rule X.  Filed as an attachment to this memorandum is State's Exhibit 1, a letter to the Court which includes a Deputy Clerk's verification that the Louisiana Supreme Court has not received any application from Savoy concerning his district court case.  Exhibit 1 is submitted for the Court's consideration pursuant to Rule 7 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, which authorizes judges to expand the record.  *Compare Shah v. United States*, 878 F.2d 1156, 1162-63 (9th Cir. 1989) (holding district court did not err in declining to strike affidavits submitted by the government *sua sponte* with its response).

"special circumstances," courts have construed it with the utmost circumspection. *See Urquhart v. Brown*, 205 U.S. 179, 182 (1907) ("The exceptional cases in which a Federal court or judge may sometimes appropriately interfere by habeas corpus in advance of final action by the authorities of the state are those of great urgency . . . such, for instance, as cases 'involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations.") (citation omitted).[18]  Such circumstances are not to be found here.  Nor, per *Younger*, has Savoy put forth evidence that the state proceeding was brought in bad faith or for purposes of harassment; or, that the statute under which he is charged is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it[.]"  *Texas Ass'n of Businesses v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (quoting *Younger*, 401 U.S. at 49) (internal quotation marks omitted).

"Federal habeas corpus should not be used as a 'pretrial-motion forum for state prisoners,'" *Tooten v. Shevin*, 493 F.2d 173, 177 (5th Cir. 1974) (quoting *Braden*, 410 U.S. at 508), and "federal court should abstain from the exercise of [*habeas*] jurisdiction if the issues raised in the petition may be resolved either by trial on the merits or by other state procedures available to the petitioner."  *Dickerson*, 816 F.2d at 225 (collecting cases).  Because he is unable to justify departure from this rule, from *Younger*, or from the exhaustion requirement, Savoy's

---

[18] Justice Rehnquist similarly wrote in *Braden* that pretrial *habeas* relief is warranted only by "the lack of jurisdiction, under the Supremacy Clause, for the State to bring any criminal charges against the prisoner."  410 U.S. at 508 (Rehnquist, J., dissenting).  He cites three cases in support of this proposition: *Wildenhus's Case*, 120 U.S. 1 (1887) (addressing whether a U.S. treaty with Belgium deprived New Jersey of jurisdiction over a homicide committed aboard a Belgian ship docked in Jersey City); *In re Loney*, 134 U.S. 372 (1890) (holding state could not prosecute perjury committed in federal court, as federal jurisdiction over the offense was exclusive); *In re Neagle*, 135 U.S. 1 (1890) (holding state could not prosecute deputy U.S. marshal for acting within the scope of his authority).  In *Wade v. Mayo* the Supreme Court described these three decisions as "examples of the use of habeas corpus to prevent state interference with the administration of a branch of the Federal Government, or . . . with treaty rights of the United States."  334 U.S. 672, 692-93 (1948) (citations omitted).

claims must be dismissed. *Compare Gibson v. Orleans Parish Sheriff*, 971 F.Supp. 2d 625 (E.D. La. 2013) (dismissing § 2241 petition on *Younger* abstention grounds); *Rogers v. Robinson*, Civ. No. 14-1527, 2015 WL 4168696 (E.D. La. July 2, 2015) (dismissing on non-exhaustion grounds); *Henry v. Orleans Parish*, Civ. No. 12-2083, 2012 WL 678094 (E.D. La. Dec. 17, 2012) (same); *Knight v. Connick*, Civ. No. 08-3727, 2008 WL 2951224 (E.D. La. July 28, 2008) (dismissing on non-exhaustion and general abstention grounds); *Queen v. Mancuso*, 2:14-1113, 2014 WL 4955853 (W.D. La. Oct. 2, 2014) (same).

## VI.   MERITS REVIEW

For the reasons set forth above, the State does not believe it necessary to reach the merits of Savoy's claims.  Nevertheless, it will briefly identify why the substance of these claims does not justify *habeas* relief.

Savoy's principle argument is that, as a California resident, he is not lawfully subject to the Louisiana district court's jurisdiction.  Yet it is well settled that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the offender] had been present at the effect, if the state should succeed in getting him within its power." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911) (Holmes, J.).[19]  *Compare United States v. Baker*, 609 F.2d 134 (5th Cir. 1980) (relying on *Strassheim* to uphold federal prosecution of drug smugglers detained on the high seas); *Buffo v. Graddick*, 742 F.2d 592 (11th Cir. 1984) (finding that Alabama could lawfully assert jurisdiction over petitioner for falsely appraising California property in California because he knew this

---

[19] As to the matter of "getting" the offender, i.e. asserting personal jurisdiction over him, "[i]t is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained." *United States v. Lussier*, 929 F.2d 25, 26 (1st Cir. 1991) (*per curiam*) (emphasis and citations omitted).  *See also Frisbie v. Collins*, 342 U.S. 519 (1952) (denying *habeas* relief to petitioner who claimed that he had been forcibly seized in Illinois and taken to Michigan by officers of that state); *Taylor v. State of Alabama*, 465 F.2d 376 (5th Cir. 1972) (*per curiam*) (same, petitioner allegedly abducted from Tennessee).

would produce effects in Alabama).  In any event, although Savoy claims that he never came to Louisiana in connection with the conduct charged, the State has put forth evidence to the contrary.[20]  Which of these opposing claims should prevail is an issue for trial.  Savoy's jurisdictional arguments are therefore unavailing.[21]

Savoy's remaining claim is based on the *Ex Post Facto* Clause.[22]  The claim lacks a factual basis.  The petition asserts that "[t]he affidavit for the arrest warrant states the alleged monetary transfer happened in March of 2012.  However The Louisiana Revised Statute citing this offense did not become effective until June 5, 2012 [sic]."[23]  It would appear that in referring to an offense that "did not become effective until June 5, 2012," Savoy has in mind one of the statutes – for forgery theft, and illegal transmission of monetary funds – that he is alleged in the warrant affidavits to have violated.[24]  But he is not now charged with any of those offenses, but instead with racketeering; and he is not now in custody based upon the arrest warrant, but instead upon the trial court's April 24, 2015 finding of probable cause as to racketeering.  If Savoy is convicted and sentenced hereafter, it will be on the basis of the racketeering charge.  At present he has not been subjected to criminal penalties under *any* statute, and the harm against which the *Ex Post Facto* Clause guards is that of being subjected to criminal penalties without fair warning

---

[20] SCR Vol. 1 of 4, Hrg. Tr. for 3/24/2015, pp. 10, 38-40 (testimony regarding a meeting of Tate and Savoy in New Orleans).

[21] The same holds true even if these claims are construed as raising the issue of venue.  *Compare* 18 U.S.C. § 3237(a); *United States v. Rowe*, 414 F.3d 271, 279 (2d Cir. 2005) (affirming federal district court in New York had been a proper venue for Tennessee resident's prosecution for trafficking child pornography because, even though he "did not intentionally transact business with a New Yorker," defendant could reasonably foresee that material posted online would be accessed from New York).

[22] It should be noted that the Ex Post Facto Clause addresses legislative action and "does not of its own force apply to the Judicial Branch of government."  *Marks v. United States*, 430 U.S. 188, 191 (1977). The interest vindicated thereby operates in the judicial sphere through the Due Process Clauses of the Fifth and Fourteenth Amendments, barring the unforeseeable expansion of criminal statutes.  *Id.* at 191-92.

[23] Rec Doc. 3, p. 9.

[24] SCR Vol. 3 of 4, Orleans Parish Arrest Warrant and Affidavit.

as to the conduct giving rise to them.  *Marks*, 430 U.S. 191.  This claim is accordingly without merit.

## <u>CONCLUSION</u>

Federal review of Savoy's claims is not permitted at this time, and in point of fact the claims are meritless.  The respondent accordingly prays that this Honorable Court deny relief and dismiss the petition.

Respectfully submitted,


/s/ Christopher J. Ponoroff
Christopher J. Ponoroff
La. Bar No. 35421
Assistant District Attorney
Parish of Orleans

619 South White Street
New Orleans, Louisiana 70119
Tel.: (504) 571-2941
Email: cponoroff@orleansda.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing response has been served upon the below-

listed *pro se* petitioner by United States Mail, First Class, this 14th day of December, 2015:

    Mr. Terry Francis Savoy, # 2395945
    General Delivery
    Orleans Parish Prison
    3000 Perdido Street
    New Orleans, Louisiana 70119


                                 /s/ Christopher J. Ponoroff
                                 Assistant District Attorney
                                 Parish of Orleans